IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID KRIKORIAN, | : | Case No. 1:10CV103 |
| | : | |
| Plaintiff, | : | Chief  Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING PLAINTIFF'S |
| | : | MOTION FOR PRELIMINARY |
| OHIO ELECTIONS COMMISSION, *et al.*, | : | INJUNCTION AND GRANTING |
| | : | DEFENDANTS' MOTION TO |
| Defendants. | : | DISMISS |

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 2) and Defendants' Motion to Dismiss (Doc. 32).  This case involves a challenge to an Ohio statute prohibiting certain "unfair political campaign activities," such as knowingly making false statements with the intent to affect the outcome of a campaign.  Ohio Rev. Code § 3517.21 (sometimes referred to hereafter as "the Ohio Statute").   Plaintiff David Krikorian, a past candidate for the United States congressional seat in Ohio's second district, alleges that § 3517.21 violates the First Amendment of the United States Constitution and is preempted by the Federal Election Campaign Act of 1971 ("FECA").  Plaintiff's claims relate to a decision of the Ohio Elections Commission ("OEC") finding that certain statements Plaintiff made during the course of a prior campaign violated § 3517.21.

Krikorian seeks a judgment declaring the "legal rights and privileges of the Plaintiff as it relates to the enforcement or threatened enforcement of the [Ohio] Statute against him, including, without limitation, a declaration that, with respect to any election to federal office, the Statute has been preempted by the Federal Election Campaign Act."  (Doc. 1 ¶ 62.)  Krikorian also requests that the judgment declare that the nine statements that formed the subject of the

complaint filed with the OEC constitute speech protected by the First Amendment, rendering Defendants without the legal authority to enforce the Ohio Statute against him in connection with those statements.

In addition to requesting a declaratory judgment, Krikorian also seeks to enjoin any future enforcement of the Ohio Statute against him to the extent he intends to engage in speech protected by the First Amendment, including speech in the form of the nine statements mentioned above, on the ground that the Ohio Statute is unconstitutional and federally preempted.

Defendants object to Plaintiff's Motion for Preliminary Injunction on the merits and on the basis that the Court should abstain from exercising jurisdiction over Plaintiff's claims under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). Defendants also, by separate motion, move to dismiss Plaintiff's claims under a number of procedural grounds, including the *Younger* abstention doctrine. For the reasons that follow, the Court finds that *Younger* abstention applies to the instant case and prevents this Court from reaching the merits of Plaintiff's complaint. Accordingly, the Court **GRANTS** Defendant's Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion for Preliminary Injunction.

## I. BACKGROUND

Plaintiff Krikorian twice in the past few years has challenged incumbent Republican Congresswoman Jean Schmidt to represent the second congressional district of Ohio. In 2008, Krikorian ran as an Independent and lost in the general election. During the current, 2010 election, Krikorian once again ran for the congressional seat. Rather than running as an Independent in the current election, he ran as a Democrat. Krikorian lost to another candidate

2

during the primary elections.

The instant dispute dates back to the days preceding the 2008 general election.  During that time period, Krikorian addressed a letter (hereinafter "2008 Letter") to his supporters and the people of the Second Congressional District that contained statements related to Schmidt's alleged position on the "Armenian Genocide."  (Doc. 2 at 11.)  In addition to sending copies of the 2008 Letter through the mail, Krikorian also posted the letter on his campaign website.

On April 29, 2009, Representative Schmidt filed a complaint with the OEC alleging that Plaintiff violated Ohio Rev. Code § 3517.21[1] by making eight false statements in the 2008 Letter, all of which relate to Krikorian's accusation that Schmidt accepted money from Turkish government-sponsored political action committees in exchange for her agreement to deny the "Armenian Genocide."  (*See* Doc. 19, Ex. 3.)  On July 21, 2009, Schmidt filed a second complaint against Plaintiff regarding one additional statement from the 2008 Letter.

On October 1, 2009, after a panel of the OEC concluded that there was probable cause that all of the challenged statements violated § 3517.21, the OEC conducted a two-day

---

[1] Section 3517.21 states in relevant part the following:

(B)  No person, during the course of any campaign for nomination or election to public office or office of a political party, by means of campaign materials, including sample ballots, an advertisement on radio or television or in a newspaper or periodical, a public speech, press release, or otherwise, shall knowingly and with intent to affect the outcome of such campaign do any of the following: . . .

(10) Post, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate.

Ohio Rev. Code § 3517.21(B)(10).

3

evidentiary hearing on both complaints.  At the beginning of the hearing, the OEC announced

that it would bifurcate the allegations against Krikorian and that it would initially only consider

evidence as to certain of the statements alleged to have violated the Ohio Statute.  The OEC

ultimately determined that Krikorian violated § 3517.21 as to the following three statements:

> (1)    "Jean Schmidt has taken $30,000 in blood money from Turkish government
>
> sponsored political action committees to deny the slaughter of 1.5 million
>
> Armenian men, women, and children by the Ottoman Turkish Government during
>
> World War I."  (Doc. 19, Ex. 3 at 2.)

> (2)    "This information is public record and can be found on the Federal Elections
>
> Commission database at http://www.FEC.gov." (as this statement references facts
>
> that support the statements that Turkish government sponsored political action
>
> committees donated $30,000)  (*Id.*)

> (3)    "I ask the people of Ohio's second congressional district to ask themselves if our
>
> Representative should be taking money from a foreign government that is killing
>
> our soldiers."  (*Id*. Ex. 4.)

The OEC allowed Schmidt to withdraw her complaint as to five similar statements in which

Krikorian accused Schmidt of denying the "Armenian Genocide," the "Christian Armenian

Genocide," or the "Genocide of Christian Armenians."  (*Id*. Ex. 3.)  Finally, the OEC

administratively dismissed one statement and found no violation of the statement, "[t]his

information is public record and can be found on the Federal Elections Commission database at

http://www.FEC.gov" but only as the statement related to facts supporting the statement that

"Turkish people donated $30,000."  (*Id*.)  As to the three statements found to have violated §

4

3517.21, the OEC ruled in two separate orders that it would not refer the matter for further prosecution, but would instead issue letters of public reprimand. (*See* Doc. 19, Exs. 3, 4.)

On November 27, 2009, shortly after the OEC issued its ruling, Krikorian appealed the OEC's rulings to the Franklin County, Ohio Court of Common Pleas.[2] (Doc. 19, Exs. 5, 6.) Through his appeal, Krikorian alleged that the OEC's decisions were not supported by reliable, probative, and substantial evidence, and were not made in accordance with law, for the following reasons: (a) FECA preempts application of Ohio Rev. Code § 3517.21(B)(10) to regulate political speech in a campaign for federal office; (b) § 3517.21(B)(10), on its face and as applied to Mr. Krikorian's conduct, violates the First Amendment to the U.S. Constitution, (c) § 3517.21(B)(10), on its face and as applied to Mr. Krikorian's conduct, violates the procedural and due process guarantees of the Fourteenth Amendment to the U.S. Constitution; and (d) the OEC's order is unjust, contrary to law, and is not supported by reliable, probative, and substantial evidence presented at the hearing and contained in the official record. (*See* Doc. 19, Exs. 5 & 6.) On the basis of those arguments, Krikorian asked the Court of Common Pleas to reverse, vacate, or modify the OEC's decisions, declare § 3517.21(B)(10) unconstitutional, enjoin the OEC from enforcing the Ohio Statute, and award any other legal or equitable relief. (*Id.*)

On January 8, 2010, the OEC moved to intervene in Krikorian's appeal and filed a motion to dismiss, arguing that Krikorian failed to properly invoke the jurisdiction of the common pleas court because he failed to name the OEC as a party-appellee pursuant to Ohio

---

[2] Because the OEC issued two separate rulings, Krikorian filed two separate notices of appeal. Those appellate actions were eventually consolidated and dismissed in a single order. Accordingly, from this point forward, the Court refers to the separate actions collectively as a single "appeal."

Revised Code § 119.12.  Rather than naming the OEC, Krikorian had named Schmidt as the

party-appellee.  On January 21, 2010, while the OEC's motion to dismiss Krikorian's appeal was

pending, Krikorian filed the instant action requesting declaratory and injunctive relief.  In his

Complaint and Motion for Preliminary Injunction, Krikorian raises many if not all of the same

arguments raised in his state court appeal.

On February 10, 2010, the Court of Common Pleas granted the OEC's motion to dismiss

due to Krikorian's failure to properly name the OEC as an appellee.  (Doc. 19, Ex. 7.)  Krikorian

had the option to appeal that ruling to Ohio's Tenth District Court of Appeals, but chose to forgo

the appeal.  (*See* Doc. 30.)  After Krikorian filed in this action notice of his decision not to

pursue that appeal, Defendants filed a Motion to Dismiss the instant suit.

## II.    DEFENDANT'S MOTION TO DISMISS

Defendants move to dismiss Krikorian's Complaint pursuant to Rule 12(b) of the Federal

Rules of Civil Procedure on the following four grounds: (1) the Court should abstain from

hearing this matter under *Younger*, 401 U.S. at 37, and its progeny; (2) the Court

lacks subject matter jurisdiction to hear this case under the *Rooker-Feldman* doctrine; (3) the

principles of preclusion operate to bar Plaintiff from bringing these claims in federal court; and

(4) this Court should decline to exercise its discretionary jurisdiction under the Declaratory

Judgment Act, 28 U.S.C. § 2201.  Finally, Defendants also argue that the OEC should be

dismissed as a defendant because Eleventh Amendment immunity bars suits against the

OEC as an agency of the State of Ohio.  As stated above, the Court finds Defendants' first

alleged basis for dismissal to be well-taken.  The Court therefore declines to consider

Defendants' alternative arguments for dismissal.

A.    *Younger* **and Its Progeny**

In *Younger*, 401 U.S. at 38-39, several individuals asked a federal district court to enjoin the Los Angeles County District Attorney from enforcing the California Criminal Syndicalism Act (the "California Act"), a law that prevented the teaching of socialist or communist doctrine. The main plaintiff, John Harris, Jr.,[3] was indicted under the California Act in state court and then, while the criminal case was pending, filed a complaint in the United States District Court for the Central District of California to enjoin his prosecution.  *Id*. at 39.  Harris argued that the mere presence of the California Act inhibited him in the exercise of his First Amendment rights. The district court held that it had jurisdiction and power to restrain the district attorney from enforcing the California Act, found that the Act was void for vagueness and overbreadth, and enjoined Harris's prosecution.  The district attorney appealed and the Supreme Court reversed the judgment of the district court on public policy grounds, holding that the injunction violated the "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."  *Id*. at 41.  The Supreme Court also held in a footnote that declaratory relief would similarly be improper under that policy.  *Id*. at 41 n. 2.

Describing a longstanding policy of federal abstention when asked to enjoin pending criminal proceedings in state court, the *Younger* Court found that intervention would be appropriate only under extraordinary circumstances:

[I]n view of the fundamental policy against federal interference with state

_____

[3] After Harris filed suit, three other individuals intervened as plaintiffs, claiming that Harris's prosecution would inhibit their First Amendment freedoms by casting a chill over protected speech.  *Id*. at 39-40.  The Supreme Court held that the intervening plaintiffs lacked standing, noting that they sought intervention solely on the basis of "feel[ing] inhibited" and did not claim that they had "ever been threatened with prosecution, that a prosecution [was] likely, or even that a prosecution was remotely possible."  *Id*. at 42.

> criminal prosecutions, even irreparable injury is insufficient unless it is both great and immediate.  Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id*. at 46 (internal citation and quotation marks omitted).

Though *Younger* arose in the context of a state criminal proceeding, the Supreme Court subsequently applied the doctrine in cases involving certain state court civil actions and state court administrative proceedings.  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603-05 (1975); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 620 (1986).  Several federal district courts, including this district, have applied the doctrine when considering cases involving hearings before state and local elections boards or commissions.  *See Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 633-34 (6th Cir. 2005) (citing *Chamber of Commerce of the United States v. Ohio Elections Comm'n*, 135 F. Supp. 2d 857 (S.D. Ohio 2001)); *Walter v. Cincione*, No. C-2-00-1070, 2000 WL 1505945 (S.D. Ohio Oct. 6, 2000); *Scolaro v. District of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 23-24 (D.D.C. 2000); *Wis. Mfrs. & Commerce v. Wis. Elections Bd.*, 978 F. Supp. 1200, 1211 (W.D. Wis. 1997)).

The Sixth Circuit has held that, pursuant to *Younger*, a federal court must abstain from considering a case on the merits under the following circumstances: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990); *see also Citizens for a Strong Ohio*, 123 F. App'x at 634.  "[U]nlike other forms of abstention, when a case is properly within the *Younger* category of cases, there is no discretion on the part of the

8

federal court to grant injunctive relief." *Sun Refining & Mktg. Co.*, 921 F.2d at 639. There are limited circumstances under which a Court may exercise jurisdiction even where the three-part *Younger* test has been met. *See Younger*, 401 U.S. at 53-54. However, the mere fact that a plaintiff makes a claim of unconstitutionality or federal preemption does not justify federal intervention where the Younger factors have been met. *See id.* at 53; *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364-65 (1989) (stating that "it is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction," and finding the same to be true with regard to preemption challenges); *Fed. Express Corp. v. Tennessee Public Service Commission*, 925 F.2d 962, 967 (6th Cir. 1991); *Sun Refining & Mktg. Co.*, 921 F.2d at 640-41.

### B.    Ongoing State Judicial Proceedings

The Sixth Circuit has held and repeatedly affirmed that "the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed." *Sun Refining & Mktg. Co.*, 921 F.2d at 639 (citing *Carras v. Williams*, 807 F.2d 1286, 1290 n. 7 (6th Cir. 1986)); *see also Fed. Express Corp.*, 925 F.2d at 969; *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986). There is no dispute that the proceeding before the OEC and the subsequent appeal were judicial in nature. Nor is there any dispute that the appeal filed with the Franklin County Court of Common Pleas was pending when Krikorian filed the present action. Nonetheless, Krikorian argues that the first requirement of *Younger* abstention is not met in this case because: (1) there is no longer any ongoing judicial proceeding in this case due to Krikorian's decision not to pursue his state court appeal to the Ohio Court of Appeals, and (2) Krikorian is not seeking to challenge or enjoin any prior decision of the OEC, but rather seeks

purely prospective relief. The Court finds both arguments problematic.

### 1. Decision to Forego Further State Appellate Review

Krikorian suggests that it would be improper for the Court to abstain under *Younger* in light of the fact that his state court appeal was dismissed shortly after he filed suit in federal court and he opted to forego appealing the common pleas court's decision to Ohio's Tenth District Court of Appeals. However, the Sixth Circuit previously rejected a similar argument in *Fed. Express Corp.*, 925 F.2d at 969. In that case, the Tennessee Public Service Commission ("TPSC") directed Federal Express to show cause why it should not be subject to a Tennessee law – the Tennessee Motor Carrier Act – that would require it to apply for a certificate of convenience and necessity from the TPSC. *Id.* at 964. Following a hearing on the matter, an administrative law judge ("ALJ") held that Federal Express was subject to the law in question. *Id.* The TPSC reviewed the ALJ's decision, heard oral argument, and then issued an order on June 9, 1987, requiring Federal Express to apply for a certificate of convenience and necessity within a certain period of time. *Id.* On July 9, 1987, Federal Express filed with the Tennessee Court of Appeals a petition for review of the TPSC's order. *Id.* Approximately one month later, on August 7, 1987, while the petition for state appellate court review was pending, Federal Express filed suit in federal court, seeking declaratory and injunctive relief against TPSC. *Id.* at 964-65. Then, on September 9, 1987, prior the federal district court's hearing on Federal Express' motion for a preliminary injunction, Federal Express filed a motion to voluntarily dismiss its petition for review in the Tennessee Court of Appeals. *Id.* at 965. The motion for voluntary dismissal was granted shortly thereafter.

Based on *Younger*, the federal district court ultimately dismissed Federal Express' federal

complaint on abstention grounds. *Id*. The court applied the day-of-filing rule to determine that Federal Express' petition for review in the Tennessee Court of Appeals constituted an ongoing state judicial proceeding. *Id*. On appeal to the Sixth Circuit, Federal Express argued that there, in fact, was no ongoing state proceeding which it sought to enjoin. *Id*. at 969. Federal Express relied on two cases in support of that assertion. First, Federal Express cited a Fifth Circuit case, *Thomas v. Texas State Bd. of Medical Examiners*, 807 F.2d 453, 456-57 (5th Cir. 1987), in which the court held that for the purpose of determining whether a federal court should abstain on *Younger* grounds, there is no requirement that a plaintiff exhaust state remedies as a prerequisite to seeking the aid of a federal court to enforce federal constitutional rights and that once an administrative proceeding has concluded, a plaintiff may opt to raise constitutional challenges in federal court rather than initiate a state court review of an administrative decision. Quoting language from *Thomas*, Federal Express argued that "[d]eference to a state proceeding is not due when the 'administrative proceedings have ended,' and where 'no state trial has taken place and no injunction against a pending state proceeding is sought.'" *Fed. Express Corp.*, 925 F.2d at 969 (quoting *Thomas v. Texas State Bd. of Med. Examiners*, 807 F.2d at 456). In addition to citing *Thomas*, Federal Express also relied on an earlier Supreme Court case, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609 n. 21 (1975), for the proposition that a party aggrieved by a state administrative proceeding need not exhaust state judicial remedies as a condition to seeking judicial relief for his constitutional claims in a federal court. *Fed. Express Corp.*, 925 F.2d at 969. Based on *Thomas* and *Huffman*, Federal Express argued that abstention was improper because its decision to voluntarily withdraw its appeal after filing suit in federal court was no different from deciding to seek judicial relief in federal court in lieu of filing an appeal in state

11

court.

The Sixth Circuit rejected Federal Express' argument as follows:

In *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986), we held "that the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed." Under this rule, if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied. *See Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1988). ***In the present case, state proceedings were ongoing because Federal Express' petition for review in the Tennessee Court of Appeals was pending on the date it filed the present action***. Federal Express' reliance on *Thomas* is misplaced because in that case, the plaintiff dismissed his state suit before filing the federal action. *Thomas*, 807 F.2d at 457. Therefore, under the day-of-filing rule, Federal Express' subsequent dismissal of its state court action did not affect the abstention analysis. Federal Express' reliance on the footnote in *Huffman* is misplaced because the Court stated that in those cases where exhaustion had not been required, the state judicial process had not been initiated. *Huffman*, 420 U.S. at 609 n. 21. To the contrary, in the present case, Federal Express had initiated state judicial proceedings, and we hold that the state court proceedings were "ongoing" for purposes of *Younger* analysis.

*Id* (emphasis added).

Just as in *Federal Express*, it makes no difference in the instant case that Krikorian choose not to appeal the common pleas court's dismissal of his petitions for state court review of the OEC rulings. The only relevant facts are that Krikorian opted to seek judicial review of the OEC rulings through the state court prior to filing suit in federal court and his state court appeal was pending on the day he filed the present action. Applying the day-of-filing rule, the Court concludes that in the context of a *Younger* abstention analysis, Krikorian's state court appeal constitutes an "ongoing judicial proceeding."

### 2. Prospective Relief

Citing *Wooley v. Maynard*, 430 U.S. 592 (1975), Krikorian argues that the Court should not abstain from hearing this matter because "this case does not involve or directly challenge or

seek to enjoin the prior state administrative proceedings before the" OEC, but rather involves

claims for purely prospective relief.  In *Wooley*, the plaintiff filed suit in federal court to

challenge two state laws, the first of which required non-commercial vehicles to bear license

plates embossed with the state motto of "Live Free or Die," and the second of which prohibited

the obscuring of figures or letters on a vehicle's license plate.  *Id*. at 707-08.  Believing the state

motto to conflict with his religious beliefs, the plaintiff covered the portion of his license plate

bearing the motto and as a result was cited for violating the second challenged statute three times

in as many months in late 1974 and early 1975.  *Id*. at 708.  The plaintiff was fined for the first

two violations and then, after he refused to pay the fines, was sentenced to fifteen days in jail.

*Id*.  Shortly thereafter, the plaintiff filed suit in federal court seeking to prevent any further

enforcement of the state statutes, insofar as they required the state motto to be displayed on his

license plate.  *Id*. at 709.

      The federal district court entered an order enjoining the state from arresting and

prosecuting the defendant and his wife at any time in the future for covering up the state motto

on their license plate.  *Id*.  On appeal to the United States Supreme Court, the state argued that

the district court should have abstained from exercising jurisdiction under *Younger*.  The

Supreme Court found that *Younger* abstention was not required under the circumstances, despite

the fact that the plaintiff had not exhausted his state appellate remedies, because the relief sought

by the plaintiff was "wholly prospective" and was not "designed to annul the results of a state"

proceeding.  *Id*. at 711.  The Supreme Court further noted that there were exceptional

circumstances justifying injunctive relief in that case.  *Id*. at 712.  Particularly, the Court pointed

to the fact that the plaintiff had been prosecuted three separate times in the span of five weeks

and noted that the case was quite different from a case in which a prosecution is threatened for the first time. *Id*.

There is no such threat of repeated prosecutions or OEC enforcement actions present in the instant case. More importantly, Krikorian is not seeking relief that is *wholly* prospective. Krikorian argues that he is simply seeking to prevent future enforcement of Ohio Rev. Code § 3517.21 against him in connection with his desired speech. However, the plain language of his Complaint belies the true basis of this suit. Krikorian essentially seeks an order from this Court overturning, or annulling, the findings of the OEC with regard to the specific statements he made regarding Schmidt's position on the Armenian genocide. Specifically, Krikorian seeks a declaratory judgment that the nine statements forming the basis of Schmidt's OEC complaint "constitute speech protected by the First Amendment and that Defendants lack the legal authority to enforce the Statute against Plaintiff for making such statement." Krikorian seeks injunctive relief on the same basis that would enjoin the OEC from taking any further action against him in the event he continues to make those statements.

The First Amendment does not protect speech that is made with knowledge of or reckless disregard of its falsity. *See Garrison v. State of La.*, 379 U.S. 64, 74-75 (1964) ("[T]he knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). With that principle in mind, this Court could not declare that the nine statements made by Krikorian about Schmidt's position on the Armenian Genocide constitute protected speech and enjoin the state from regulating that speech without finding that those statements are, in fact, true. That is because to the extent that the Court finds the statements false, any declaration that

14

they are "protected speech" would effectively sanction the further propagation of statements that Krikorian knows are false. Accordingly, while Krikorian claims he only seeks prospective relief, the relief that he actually prays for in his Complaint is an order from a federal court overturning the OEC's findings and declaring that the allegations he has made against Schmidt are true.[4]

As discussed below, Krikorian had an opportunity to appeal the ruling of the OEC in state court. Rather than pursue that appeal, he chose to launch a collateral attack against the OEC in this forum, attempting to disguise it as a complaint for prospective relief. The Court finds that under the circumstances, it would be improper to exercise jurisdiction in this matter and that the better course of action would be to abstain pursuant to the principles set forth in *Younger*. *See Walter v. Cincione*, No. C-2-00-1070, 2000 WL 1505945, at *3 (S.D. Ohio Oct. 6, 2000) (finding, in a case factually similar to the instant case, that the *Younger* abstention doctrine applied despite the plaintiffs' claim that they were only seeking prospective relief).[5]

---

[4] The Court recognizes that the OEC did not ultimately issue a ruling on all of the statements addressed in the Complaint. However, all of the statements are intricately related and the statements that Schmidt voluntarily dismissed are so similar to the statements that were ruled upon that this Court could not issue a declaration as to the truth or falsity of any of the voluntarily dismissed statements without affecting the OEC's ruling.

[5] In *Walter*, plaintiffs sough declaratory and injunctive relief relating to a decision by the OEC which found that the plaintiffs' use of the phrase "Independent Democrat" in connection with a campaign for the U.S. House of Representatives was false and therefore violated Ohio Revised Code § 3517.21. *Walter*, No. C-2-00-1070, 2000 WL 1505945, at *1. By the time the plaintiffs had filed their federal suit, the OEC had already orally ruled that plaintiffs had violated the Ohio Statute. *Id.* Like in the instant case, the OEC decided not to refer the matter for criminal prosecution. *Id.* In their federal suit, the plaintiffs argued that the court should not abstain under Younger because they only sought to enjoin prospectively any further action on the part of the OEC in connection with the use of the phrase "Independent Democrat." *Id.* at *3. The court rejected that argument, finding that:

> This is the proverbial distinction without a difference. Obviously, enjoining defendants from taking action on plaintiffs' use of the phrase "Independent Democrat" has the effect of enjoining defendants from proceeding on the original [] complaint and decision. But for the [original] proceeding, there would be no

15

C. **Important State Interest**

There does not appear to be any substantial dispute that the underlying OEC proceeding involved an important state interest, namely, maintaining truth in the electoral process.  That interest has been recognized as important by at least one other court in a case dealing with the same Ohio Statute at issue in this case.  *See Walter*, No. C-2-00-1070, 2000 WL 1505945, at *3 Thus, the second *Younger* requirement is satisfied.

D. **Adequate Opportunity to Raise Constitutional Challenges**

As to the third *Younger* factor, the Court must "presume that the state courts are able to protect the interests of the federal plaintiff."  *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995). The burden of establishing the inadequacy of the state court proceedings lies with the plaintiff. *Meyers v. Franklin Cty. Ct. of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001).  The Sixth Circuit has previously found that plaintiffs have an adequate opportunity to raise constitutional challenges during OEC proceedings. *Citizens for a Strong Ohio*, 123 F. App'x at 634.  Krikorian challenges the expertise of the OEC members who presided over Schmidt's complaint. However, Krikorian had the opportunity to avail himself of state appellate procedure, but chose not to.  There is no dispute that Krikorian could have raised his First Amendment and preemption claims through the state appeal.  The Sixth Circuit "has previously observed that even where state administrative proceedings would not afford the opportunity to raise constitutional claims, it is sufficient to satisfy this third prong that constitutional claims may be raised in state court judicial review of the administrative proceeding." *Sun Refining & Mktg. Co.*

future action.  The instant lawsuit is a direct challenge to the Ohio Election Commission's proceeding and decision on the [original] complaint.
*Id.*

16

*v. Brennan*, 921 F.2d at 641. Accordingly, the Court finds that Krikorian had an adequate opportunity to raise claims of unconstitutionality and federal preemption in state court.

    **E.**    ***Younger* Exceptions**

    The *Younger* Court recognized that there may be some cases in which abstention may be improper even where the *Younger* criteria are met, such as in cases where the plaintiff can demonstrate bad faith, harassment, or flagrant unconstitutionality. *Younger*, 401 U.S. at 43-44, 48-50; *see also Dombrowski v. Pfister*, 380 U.S. 479, 482-85 (1965) (federal intervention proper where the plaintiffs made substantial allegations that state officials had made threats to enforce particular statutes against them "without having any real expectation of securing valid convictions, but rather [as] part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass [the plaintiffs] and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana."); *New Orleans Pub. Serv., Inc.*, 491 U.S. at 367 (suggesting in dicta that a facially conclusive claim of federal preemption may be sufficient to render abstention inappropriate). None of those exceptions are present in the instant case.

    Krikorian fails to show that the Ohio Statute is flagrantly unconstitutional. The portion of the statute at issue here regulates only false statements made with knowledge of or with reckless disregard for the falsity of the statements. That narrow category of speech, as discussed above, is not protected by the First Amendment. *See Garrison*, 379 U.S. at 74 (1964); *N.Y. Times Co.*, 376 U.S. at 279-80. Indeed, Plaintiff very likely would not prevail on his current First Amendment challenge to the Ohio Statute.

    In his Motion for Preliminary Injunction, Krikorian also argues that the Ohio Statute and

the OEC's enforcement of the statute violates his due process and equal protection rights. The Court doubts whether Krikorian adequately raised those challenges in his Complaint – the Complaint makes no mention of an equal protection violation and only briefly addresses due process in one paragraph of the portion of the Complaint describing factual and legal allegations. Nevertheless, the Court finds neither challenge to be so persuasive as to suggest a flagrant violation of constitutional law.

Finally, as to Plaintiff's federal preemption claim, the Court finds that the preemption question is not facially conclusive. Krikorian argues that FECA, 2 U.S.C. § 431 *et seq.*, preempts Ohio Rev. Code § 3517.21 to the extent that this case involves the regulation of a federal election. Defendants respond that FECA has been interpreted narrowly and that it does not purport to preempt every state law that may touch on a federal election. As discussed below, FECA includes an express preemption clause, but there are differing opinions as to the scope of that clause.

Congress originally passed FECA in 1971 and amended it in 1974. *Weber v. Heaney*, 995 F.2d 872 (8th Cir. 1993). The Act "sets forth comprehensive rules regarding campaigns for federal office." *Bunning v. Commonwealth of Ky.*, 42 F.3d 1008, 1011 (6th Cir. 1994). Specifically, it "imposes limits and restrictions on contributions; provides for the formation and registration of political committees; and mandates reporting and disclosure of receipts and disbursements made by such committees." *Id.* (citing 2 U.S.C. §§ 432-434). With the 1974 amendments to FECA, Congress provided an explicit preemption clause stating that "the provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office." 2 U.S.C. § 453. While at first

18

blush, § 453 appears to have an exceedingly broad scope, courts have not interpreted in that manner.  Rather, courts have recognized that § 453 is ambiguous and have "'given [§] 453 a narrow preemptive effect in light of its legislative history.'"  *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1280 (5th Cir. 1994) (quoting *Stern v. General Elec. Co.*, 924 F.2d 472, 475 n. 3 (2d Cir. 1991)); *see also Weber*, 995 F.2d at 875.  Indeed, courts recognize in this area "a 'strong presumption' . . . against preemption."  *Karl Rove & Co.*, 39 F.3d at 1280 (quoting *Weber*, 995 F.2d at 875).  To determine whether the scope of § 453 is broad enough to preclude enforcement of Ohio Rev. Code § 3517.21(B)(10), the Court must "identify the domain expressly pre-empted" by 2 U.S.C. § 453.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996).

Section 453 incorporates by reference "rules prescribed under" FECA.  With the 1974 amendments to FECA, Congress created the Federal Election Commission ("FEC") and "vest[ed] in it primary and substantial responsibility for administering and enforcing the Act," delegating to the agency "extensive rulemaking and adjudicative powers."  *Buckley v. Valeo*, 424 U.S. 1, 109 (1976).  The FEC has issued a regulation interpreting the scope of § 453 in accordance with the statute's plain language and it's legislative history.  *See* 11 C.F.R. § 108.7.  That regulation identifies specific areas which are and are not superceded:

> (a) The provisions of the Federal Election Campaign Act of 1971, as amended, and rules and regulations issued thereunder, supersede and preempt any provision of State law with respect to election to Federal office.

> (b) Federal law supersedes State law concerning the--

> > (1) Organization and registration of political committees supporting Federal candidates;

> > (2) Disclosure of receipts and expenditures by Federal candidates and political committees; and

(3) Limitation on contributions and expenditures regarding Federal candidates and political committees.

(c) The Act does not supersede State laws which provide for the--

(1) Manner of qualifying as a candidate or political party organization;

(2) Dates and places of elections;

(3) Voter registration;

(4) Prohibition of false registration, voting fraud, theft of ballots, and similar offenses;

(5) Candidate's personal financial disclosure; or

(6) Application of State law to the funds used for the purchase or construction of a State or local party office building to the extent described in 11 C.F.R. 300.35.

*Id.* Based in part on that regulation, the Sixth Circuit held in *Bunning* that 2 U.S.C. § 453 preempted a Kentucky campaign financing statute and prevented the state Registry of Election Finance from investigating polling expenditures made by a federal political committee registered with the FEC. *Bunning*, 42 F.3d at 1012. Krikorian relies on *Bunning* to demonstrate that § 453 is broad in scope. However, *Bunning* in distinguishable from this case in that it involved a state law related to campaign financing – an area in which FECA has often been found to preempt state law. The instant case, in contrast, does not involve the area of campaign finance. Instead, the state law at issue herein is aimed at regulating false statements made during the course of an election. Accordingly, *Bunning* is not dispositive of the issue before this Court.

At least one other court has ruled that FECA does not preempt a state statute substantially similar to the Ohio Statute that Krikorian challenges, albeit with only a brief analysis. *See State of Minn. v. Jude*, 554 N.W.2d 750, 752-53 (1996) (finding that FECA does not preempt a state

20

law regulating false campaign advertising and other false statements in the course of a campaign); *see also Friends of Phil Gramm v. Americans for Phil Gramm in '84*, 587 F. Supp. 769, 776 (E.D. Vir. 1984) (noting that because the "Federal Election Act . . . nowhere specifically addresses the problem of fraud in political advertising," "Congress obviously did not intend completely to preclude state regulation in this area, thus giving political organizations license to mislead," and finding as a result that "[t]he only reasonable conclusion is that Congress intended to leave regulation of fraud in political advertising to the states, except where such regulation conflicts with the Act's specific provisions.")

On its face, the Ohio Statute at issue here does not fit neatly into any of the categories listed under 11 C.F.R. § 108.7.  The question of whether the statute is federally preempted is far from clear and would require this Court to engage in a detailed analysis of state and federal law. Accordingly, the Court finds that the issue of federal preemption in this case is not facially conclusive.  *See Fed. Express Corp.*, 925 F.2d at 968 (holding that abstention was proper where the question of federal preemption was not clear and the state court had concurrent jurisdiction to address preemption issues).

**III.    CONCLUSION**

For the reasons stated above, this Court must abstain under *Younger* from exercising jurisdiction over this matter.  Accordingly, the Court hereby **DENIES** Plaintiff's Motion for Preliminary Injunction and **GRANTS** Defendants' Motion to Dismiss.

IT IS SO ORDERED.

___s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court